## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| **BRANDON DICKENS**, | |
| Plaintiff, | |
| v. | Case No. 23-cv-2900 (CRC) |
| **DISTRICT OF COLUMBIA**, | |
| Defendant. | |

## MEMORANDUM OPINION AND ORDER

Pro se plaintiff Brandon Dickens has worked as a school bus driver for the District of Columbia Office of the State Superintendent of Education ("OSSE") since June 2000. Throughout his tenure, he claims to have faced a concerted campaign of mistreatment by the agency—not to mention other District agencies, federal and District officials, his co-workers, his supervisors, their associates, and his union representatives. He thus filed this lawsuit against OSSE, alleging sex-based discrimination, a hostile work environment, and retaliation in violation of Title VII of the Civil Rights Act of 1964.

Now before the Court are the District's motion to dismiss Dickens's complaint under Federal Rule of Civil Procedure 12(b)(6) and various motions filed by Dickens. For the reasons stated below, the Court will grant the District's motion to dismiss in part and deny it in part. And it will deny Dickens's second motion to amend his complaint, grant his motion to appoint counsel, and deny his motion to electronically file.

## I.    Background

### A.    Factual Background

The Court draws the following factual background from Dickens's numerous filings and exhibits, all of which it must consider when deciding whether to dismiss his pro se complaint.

See <u>Ho v. Garland</u>, 106 F.4th 47, 50 (D.C. Cir. 2024).  While Dickens describes events spanning nearly sixteen years, the Court includes only allegations relevant to the pending motions.  The District no doubt disputes many of Dickens's allegations.

Brandon Dickens was hired as a motor vehicle operator for OSSE in June 2000.  <u>See</u> ECF 1 ("Compl.") at 1.  His first eight years on the job were apparently uneventful.  In 2008, however, things took a turn.  Dickens alleges that he was "demote[d]" to the role of bus attendant (or aide) after he prevailed in an Accident Review Board ("ARB") proceeding—unlike female drivers who succeeded in similar cases but were reinstated as motor vehicle operators.  <u>E.g.</u>, <u>id.</u> at 1, 3; ECF 1-1 ("June 2023 EEOC Charge") at 2 (page numbers designated by CM/ECF); <u>see also</u> ECF 19 ("Opp'n") at 10, 17 (page numbers designated by CM/ECF); ECF 19-1 ("Opp'n Mem.") at 7.  He filed a sex discrimination complaint with the D.C. Office of Human Rights ("OHR"), the D.C. agency that handles discrimination complaints, as a result.  Compl. at 1.

Dickens remained in the attendant role for the next eight years, during which he was allegedly taunted, humiliated, and even falsely accused of spreading bedbugs by his coworkers and manager.  <u>See id.</u> at 3–4.  This purported mistreatment led him to file Equal Employment Opportunity ("EEO")[1] charges, ultimately resulting in his return to a driving position sometime in 2015 or 2016.  <u>See id.</u>; Opp'n at 5, Opp'n Mem. at 6–7.  But, despite the change in role, Dickens asserts he continued to face adversity at work, including threats from his manager against filing further EEO complaints, placement on administrative leave based on false accusations about his handling of a student incident, and being accosted by a colleague.  <u>See</u>

---

[1] Dickens alternates between "EEO" and "EEOC."  The "EEOC" (Equal Employment Opportunity Commission) is the main federal agency that enforces discrimination laws.  "EEO" is used as shorthand for equal employment opportunity in many contexts.  The Court will follow Dickens's lead, using EEO when he is unspecific and EEOC when he refers to the federal agency.

Compl. at 4–5; Opp'n at 5–7, 17; Opp'n Mem. at 6–7.  These actions led him to contact agency EEO counselors and file EEO charges in 2016.  See Compl. at 4–5; Opp'n at 17.

In 2021, Dickens was transferred once again—this time, to OSSE's Adams Place Terminal, which he describes as one of the least desirable due to its "dangerous" routes, including the transport of particularly violent students.  Compl. at 6; ECF 14-1 (First Mot. Am. Compl. Supp. Mem. ("Compl. Mem.")) at 1.  Then, in early 2022, he was in a "minor accident" where he "tapp[ed]" a telephone pole while operating a school bus.  Compl. at 1.  In response, in March 2022, OSSE ordered him to spend five months in an "employee trailer," where Dickens claims he was mocked and, on one occasion, punched in the stomach by a co-worker.  Id. at 1; see also Compl. Mem. at 1; June 2023 EEOC Charge at 2; Opp'n at 8–9; Opp'n Mem. at 2. Dickens alleges that, during the period when he remained relegated to the trailer, a female bus aide tested positive for drug use but was permitted continue her route.  See Compl. at 6; June 2023 EEOC Charge at 2.  Eventually, Dickens escaped the trailer and began working as an aide, while, he claims, "less tenured" or "new" female drivers were assigned to drive his previous routes.  Compl. at 1, 6; Opp'n at 2, 9, 17.

On August 9, 2022, Dickens received a four-day suspension for the telephone pole accident.  See Compl. at 1.  Dickens believes the real reasons for his suspension were complaints he made to his terminal manager that female aides were "sabotag[ing]" his runs and his refusal to drive dangerous buses that were "jimmied" to function.  Id.; June 2023 EEOC Charge at 2.  He maintains that "[n]o female driver has been similarly slandered and falsely disciplined . . . [for] a similar accident."  Compl. at 1; see also June 2023 EEOC Charge at 1–2; Opp'n at 2, 11, 15; Opp'n Mem. at 2.  According to Dickens, this suspension was later "rescinded" by Human Resources.  Compl. at 2, 6–7.  On October 6, 2022, Dickens seemingly filed an inquiry with the

EEOC that became a charge, though the details remain unclear.  See Opp'n at 12; ECF 24 at 18 (page numbers designated by CM/ECF) ("Portal Notes") (EEOC portal print-out noting submission of an inquiry dated October 6, 2022, with a status of "[c]harge [p]repared").

Dickens next claims that, in November 2022, he was assigned to another "troubled run" of "emotionally disturbed [h]igh [s]chool students" after he refused to "take out a defective school bus."  Compl. at 2, 5; June 2023 EEOC Charge at 2, 9; Opp'n at 3.  He highlights one incident where the students on his bus were "screaming," "standing up," and throwing items out of the windows.  Compl. at 2.  Dickens asserts that, when he "refus[ed] to obey a supervisor's unreasonable order to confront the emotionally disabled students who had been threatening him as he was driving[,]" he was suspended for five days even though his two bus aides (one of whom was a woman) faced no consequences.  Id.; June 2023 EEOC Charge at 2–3.  During this same period, he alleges that (1) other school bus drivers would purposely tailgate him; (2) his email was surveilled without his consent; and (3) his supervisors would tamper with his leave schedule to make him appear "AWOL."  Compl. Mem. at 1–2; see also Opp'n at 17.  Also in November 2022, Dickens was allegedly denied holiday leave he had requested in advance, purportedly because he had already exhausted his holiday leave, even though other female employees were later granted leave "on the spot."  Opp'n at 2; Compl. at 1; see also Compl. Mem. at 1; Opp'n Mem. at 3.

On May 11, 2023, Dickens filed an intake form with OHR.  See ECF 19-2 ("OHR Dismissal") at 3–5.  On June 12, 2023, he filed an intake form with the EEOC, and, on June 27, 2023, a charge of discrimination with the EEOC.  See Portal Notes; June 2023 EEOC Charge at 1.  In the meantime, Dickens alleges that, starting on June 2, 2023, he was denied pay.  See Compl. at 6; Opp'n at 1.

In his June 2023 EEOC charge and statement, Dickens alleges sex-based discrimination, retaliation, and a hostile work environment starting in March 2022.[2]  See June 2023 EEOC Charge at 1.  The charge references (1) Dickens's four-day suspension in August 2022 for the telephone pole accident; (2) his denial of holiday leave in November 2022; and (3) the "ongoing bullying and harassment" at Adams Place Terminal.  See id.  The accompanying statement elaborates on those allegations, as well as his five-month stint in the trailer in March 2022, his assignment to a "dangerous run" in November 2022, and his five-day suspension in November 2022 for refusing to confront rowdy students on this route.  See id. at 2–4.

Throughout his pleadings, Dickens also asserts that the District hindered his efforts to comply with the administrative process.  He says he experienced problems with his first assigned EEO counselor, leading to a reassignment, and more broadly struggled to locate and interview with EEO counselors as early as 2019.  Opp'n at 3, 11–17; Opp'n Mem. at 2–4, 13–14; ECF 23 ("Supp. Opp'n") at 1–2.  He also claims he encountered inadequate support from OHR and ongoing logistical difficulties with the EEOC portal.  See Opp'n at 3, 11–17; Opp'n Mem. at 3–4, 13–14; Supp. Opp'n at 1–2.  In support, he offers two certified letters and other complaints he made to OHR requesting assistance in securing an EEO counselor.  See ECF 19-4, 19-5, 19-7, 19-8, 19-9.  Additionally, Dickens alleges that the District failed to provide him the required exit letters, which, under D.C. regulations, inform employees of their charge's disposition and their right to file a complaint within 15 days.  See Opp'n at 12–13.  Without these letters, Dickens argues, his ability to file a timely charge was delayed.  See Opp'n Mem. at 7.

---

[2] Dickens appears to have originally asserted he also suffered age discrimination, but he never pursued this claim at the administrative level, nor is there any reference to age discrimination in his complaint or other filings in this case.

B.     <u>Procedural Background</u>

On September 29, 2023, Dickens, proceeding pro se, filed his original complaint, in which he sought "backpay" and "[f]rontpay" and demanded "that all supervisors and employees who participated in his harassment, etc be made personally liable and disciplined up to being fired[.]"  Compl. at 7; <u>see also</u> ECF 14 (First Mot. Am. Compl. ("MTA I")) at 1–2 (also seeking compensatory damages, special damages, punitive damages, and correction of his disciplinary record).  He also filed a motion to appoint counsel, ECF 5, which the Court denied because he had not demonstrated his claims were particularly complex or that his case otherwise justified appointment, <u>see</u> ECF 6.

Dickens then filed a motion to amend his complaint by supplementing it with a memorandum and exhibits, MTA I at 6–19; <u>see also</u> ECF 15.  The District did not oppose this motion, noting that the additional filings were mostly redundant of information in the original complaint, <u>see</u> ECF 16 (Motion to Dismiss ("MTD")) at 1 n.1, and the Court granted it, <u>see</u> ECF 17.

Meanwhile, the District filed the pending motion to dismiss.  Dickens filed an opposition with supporting exhibits and moved for an extension of time to complete the opposition.  The Court granted the extension but instructed that it would not accept any additional briefing from Dickens without leave of the Court and warned that future failures to comply with the Local Rules could result in sanctions.  <u>See</u> Aug. 21, 2024, Minute Order.  Dickens then filed another motion to appoint counsel and a motion to electronically file.  <u>See</u> ECF 21 ("Mot. Appoint Counsel").

Dickens subsequently filed his supplemental opposition, as well as a "notice of praecipe"[3] and a second motion to amend his complaint, ECF 22 (Second Mot. Am. Compl. ("MTA II")), with additional exhibits and a memorandum, see Supp. Opp'n; ECF 24.  The District opposes this second motion to amend.  See ECF 26.

Now before the Court are the District's motion to dismiss, Dickens's second motion to amend his complaint, and his motion to appoint counsel and electronically file.

## II.    Legal Standards

### A.    Failure to State a Claim

To survive a Rule 12(b)(6) motion, a complaint must contain sufficient factual matter, accepted as true, to state a plausible claim for relief.  Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009); Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007).  A claim is plausible if the pleaded facts allow the court to reasonably infer that the defendant is liable for the misconduct alleged.  Ashcroft, 556 at 678.  While a court must take the complaint's factual allegations as true, it need not accept legal conclusions, and mere "labels and conclusions" or "[t]hreadbare recitals of the elements of a cause of action" are insufficient.  Id. (quoting Twombly, 550 U.S. at 555).

### B.    Pro Se Litigants

"[T]he pleadings of *pro se* parties are to be 'liberally construed' and 'held to less stringent standards than formal pleadings drafted by lawyers[.]'"  Tyson v. Brennan, 277 F. Supp. 3d 28, 35 (D.D.C. 2017) (quoting Erickson v. Pardus, 551 U.S. 89, 94 (2007) (per curiam)).  A pro se litigant's complaint is assessed "in light of all filings, including filings

---

[3] The Court will not consider this notice because, after granting Dickens extensions on his oppositions and its supplement, the Court specifically instructed him not to submit further briefing without the Court's permission.

responsive to a motion to dismiss," such as the opposition to the motion and attached exhibits. Ho, 106 F.4th at 50 (quotation marks omitted) (quoting Brown v. Whole Foods Mkt. Grp., Inc., 789 F.3d 146, 152 (D.C. Cir. 2015) (per curiam)).

C.    Title VII Administrative Exhaustion

"Courts frequently treat failure to exhaust as an affirmative defense," but it still "may be invoked in a Rule 12(b)(6) motion if the complaint somehow reveals the exhaustion defense on its face." Thompson v. DEA, 492 F.3d 428, 438 (D.C. Cir. 2007); see also Suarez v. Colvin, 140 F. Supp. 3d 94, 99 (D.D.C. 2015). A motion to dismiss for a failure to exhaust Title VII administrative remedies is properly analyzed under Rule 12(b)(6). See Scott v. Dist. Hosp. Partners, 60 F. Supp. 3d 156, 161 (D.D.C. 2014) (Cooper, J.).

D.    Amending a Complaint

Under Federal Rule of Civil Procedure 15, a plaintiff may amend his complaint once as a matter of course within 21 days of being served with a Rule 12(b) motion. Fed. R. Civ. P. 15(a)(1)(B). Beyond that, amendments require either the opposing party's written consent or court approval. Fed. R. Civ. P. 15(a)(2). While "[t]he [C]ourt should freely give leave [to amend] when justice so requires[,]" id., a plaintiff must still "comply with the law of this circuit by filing a motion for leave to amend h[is] complaint and attaching a proposed amended complaint[,]" Rollins v. Wackenhut Servs., Inc., 703 F.3d 122, 130 (D.C. Cir. 2012); see also LCvR 15.1.

III.    **Analysis**

    A.    <u>The District's Motion to Dismiss</u>

        *1.  Exhaustion*

        The District first contends that Dickens is time-barred from asserting claims based on conduct that occurred before August 31, 2022, due to his failure to exhaust administrative remedies.  <u>See</u> MTD at 4.

        Under Title VII, a plaintiff must exhaust his administrative remedies for each discrete discriminatory employment act before filing a claim.  <u>See</u> <u>Nat'l R.R. Passenger Corp. v. Morgan</u>, 536 U.S. 101, 113 (2002); <u>Marshall v. Fed. Express Corp.</u>, 130 F. 3d 1095, 1098 (D.C. Cir. 1997).  To do so, the plaintiff must file a charge with the EEOC within 180 days of the act, unless he first initiates proceedings with a state or local agency, in which case the deadline extends to 300 days.  <u>Gupta v. Northrop Grumman Corp.</u>, 462 F. Supp. 2d 56, 58 (D.D.C. 2006) (citing 42 U.S.C. § 2000e-5(e)).

        Because the EEOC has a work-sharing agreement with OHR, any claim filed with the EEOC is automatically cross-filed with OHR.  As a result, although Dickens filed the relevant charge with the EEOC, he was treated as if he had also filed with OHR, giving him 300 days— rather than 180—to file.  <u>See</u> <u>Carter v. George Washington Univ.</u>, 387 F.3d 872, 879 (D.C. Cir. 2004) (concluding that, though plaintiff's Title VII charge filed with the EEOC was beyond the 180-day deadline, because it was automatically cross-filed with the OHR, the 300-day deadline applied) (citing 29 C.F.R. § 1601.13(a)(4)(ii)(A)); <u>Tucker v. Howard Univ. Hosp.</u>, 764 F. Supp. 2d 1, 6 (D.D.C. 2011) (same) (collecting cases).  The District argues that, because Dickens filed his charge on June 27, 2023, any discrete acts occurring more than 300 days before the filing of that charge—before August 31, 2022—fall outside his filing window and thus are not actionable.

See MTD at 5 (citing Compl. at 1–7; June 2023 EEOC Charge).[4]  These acts include Dickens's five-month assignment to the trailer in March 2022, his four-day suspension for the telephone pole accident on August 9, 2022, and any of the alleged bullying and harassment that took place before August 31, 2022.

Administrative exhaustion, however, is not jurisdictional.  See Koch v. Walter, 935 F. Supp. 2d 164, 170 (D.D.C. 2013); Douglas v. Donovan, 559 F.3d 549, 556 n.4 (D.C. Cir. 2009).  It is subject to equitable tolling.  Zipes v. Trans World Airlines, Inc., 455 U.S. 385, 393 (1982); Brown v. Marsh, 777 F.2d 8, 14 (D.C. Cir. 1985).  To justify equitable tolling, a plaintiff must establish that (1) "he has been pursuing his rights diligently" and (2) "some extraordinary circumstances" prevented timely filing.  Pace v. DiGuglielmo, 544 U.S. 408, 418 (2005).  The "extraordinary circumstances" must be beyond the litigant's control, Menominee Indian Tribe of Wis. v. United States, 577 U.S. 250, 255–57 (2016), and not due to the litigant's "own misunderstanding of the law or tactical mistakes," Head v. Wilson, 792 F.3d 102, 107 (D.C. Cir. 2015) (quotation marks omitted).  Courts have, however, found this prong satisfied where, for example, litigants were "misled" about the limitations period "by inaccurate or ineffective notice from a government agency required to provide notice of the limitations period."  Bowden v. United States, 106 F.3d 433, 438 (D.C. Cir. 1997).

Dickens argues that equitable tolling is appropriate here for two reasons.[5]  First, he contends that, beginning in 2019, he faced significant difficulty locating and interviewing with

---

[4] The Court may consider the District's exhaustion argument because it is "reveal[ed]" on the face of Dickens's complaint and its attached exhibit, which state the dates of his EEOC charge and the allegations detailed therein.  See Thompson, 492 F.3d at 438.

[5] Dickens does not explicitly request equitable tolling, but the Court interprets his reference to the continuing violation doctrine, see Opp'n at 1, another equitable doctrine that is

EEO counselors due to OHR's inattention and persistent logistical issues with the EEOC portal. See Opp'n at 3, 11–17; Opp'n Mem. at 3–4, 13–14; Supp. Opp'n at 1–2; OHR Dismissal at 3–5. As proof of his active, thwarted attempts, he offers two certified letters and other complaints he made to OHR asking for additional assistance in securing an EEO counselor.  See ECF 19-4, 19-5, 19-7, 19-8, 19-9.  Second, D.C. regulations mandate that an employee must interview with and receive an "Exit Letter"—which informs the employee of the disposition of the charge and his right to file an EEO complaint within 15 days—from an EEO counselor before filing the complaint.  See D.C. Mun. Regs. tit. 4 §§ 105.1, 105.5–05.7.  Dickens claims the District failed to provide him with the requisite Exit Letter, which delayed his ability to file a timely charge. See Opp'n Mem. at 7.

The District has not disputed these allegations, which support that Dickens diligently attempted to satisfy the mandatory EEO process but was impeded by the District's inaction and administrative obstacles beyond his control.  Most notably, the District's apparent failure to issue him an Exit Letter, a required procedural step, directly affected his ability to file.  Accordingly, the Court concludes Dickens has plausibly pled grounds for equitable tolling.  See Leigh v. Ruppe, No. 82-cv-2709, 1983 WL 575, at *3 (D.D.C. June 23, 1983) (on combined motion to dismiss/motion for summary judgment, holding that a plaintiff's unsuccessful attempts to notify an EEO counselor warranted equitable tolling of filing deadlines); Niskey v. Kelly, 859 F.3d 1, 9 (D.C. Cir. 2017) (affirming motion to dismiss but concluding that limited equitable tolling was appropriate where the EEO counselor "completely dropped the ball" on processing the plaintiff's informal claim and failed to inform him of applicable deadlines).

---

inapplicable here, as a broader request for equitable relief from Title VII's exhaustion requirements.

While the Court will apply equitable tolling to acts preceding August 31, 2022, it will limit its considerations any acts "articulated in the administrative charge," "reasonably related" allegations, or those "within the scope" a foreseeable administrative investigation. Shipman v. Nat'l R.R. Passenger Corp., 241 F. Supp. 3d 114, 123 (D.D.C. 2017) (citation omitted). Accordingly, the Court will consider only such acts that occurred after March 1, 2022, the charge's commencement date. See generally June 2023 EEOC Charge.

        *2.   Sex Discrimination*

To plead a discrimination claim, a plaintiff must allege that he (1) belongs to a protected class and (2) suffered an adverse employment action giving rise to an inference of discrimination. Stella v. Mineta, 284 F.3d 135, 145 (D.C. Cir. 2002). Absent direct evidence of discrimination, a plaintiff may state a claim by showing that he was treated differently from similarly situated employees outside his protected class. Brown v. Sessoms, 774 F.3d 1016, 1022 (D.C. Cir. 2014). To establish similarity, the plaintiff must show that "all . . . relevant aspects" of his employment were "nearly identical" to those of the comparator. Burley v. Nat'l Passenger Rail Corp., 801 F.3d 290, 301 (D.C. Cir. 2015) (quoting Holbrook v. Reno, 196 F.3d 255, 261 (D.C. Cir. 1999)). Factors relevant to this analysis include "the similarity of the plaintiff's and the putative comparator's jobs and job duties, whether they were disciplined by the same supervisor, and, in cases involving discipline, the similarity of their offenses." Id. "While the burden is 'not onerous' at the motion-to-dismiss stage, it requires more than the bald assertion that there is a similarly situated comparator." Hollingsworth v. Vilsack, No. 23-cv-2427 (LLA), 2024 WL 4332118, at *10 (D.D.C. Sept. 27, 2024) (citation omitted).[6]

---

[6] Under current D.C. Circuit precedent, plaintiffs from "historically favored group[s]," like Dickens (a man), must clear an additional hurdle: They must allege "background

Dickens's complaint is deficient because it fails to plead a similarly situated comparator or otherwise allege facts giving rise to a plausible inference of discrimination.

To begin, the potential adverse actions at play here are (1) Dickens's 5-month assignment to the employee trailer in March 2022 after his telephone pole accident; (2) his four-day suspension in August 2022 for the same accident; (3) his assignment to the supposedly dangerous run in November 2022; (4) his five-day suspension in November 2022 after his refusal to confront the students on this dangerous run; (5) the denial of his request for holiday leave in November 2022, and (6) the denial of his pay starting on June 2, 2023. Whether all these actions are adverse is far from clear. See, e.g., Brown v. Georgetown Univ. Hosp. Medstar Health, 828 F. Supp. 2d 1, 9 (D.D.C. 2009) (concluding that suspensions with pay are generally not considered adverse and collecting cases); Nurriddin v. Bolden, 674 F. Supp. 2d 64, 90 (D.D.C. 2009) (holding that basic denial of leave is generally not an adverse action unless it had a financial impact on the plaintiff, including an indirect impact). But, even assuming they are, Dickens likely failed to plead facts giving rise to an inference of discrimination for any of them.

Consider first Dickens's assignment to the trailer and four-day suspension after the bus accident. He asserts that a female bus aide was not similarly sidelined despite failing a drug test. But, according to Dicken's own allegations, a bus aide is a subordinate position to a bus driver, so these are not similar jobs with similar duties. See Compl. at 4 (describing reassignment from driver to aide role as a "demot[ion]"); June 2023 EEOC Charge at 2 (same). And a positive drug

---

circumstances that support the suspicion that [the defendant] is the unusual employer who discriminates against the majority." Moore v. Castro, 192 F. Supp. 3d 18, 52 n.14 (D.D.C. 2016) (citation omitted). The Supreme Court, however, is presently considering the validity of this requirement in Ames v. Department of Youth Services (No. 23-1039). Because Dickens's claim fails for independent reasons, the Court need not decide whether he has satisfied the background-circumstances requirement.

test for a non-driving employee is a fundamentally different offense from a bus accident caused by a driver. Moreover, Dickens has not alleged that he and this female bus aide were disciplined by the same supervisor. Therefore, he has not alleged facts to support that this female aide was a similarly situated comparator. Burley, 801 F.3d at 301. Dickens also claims that "no female driver" has been similarly reprimanded for this type of accident. Compl. at 1; see also Opp'n at 15; Opp'n Mem. at 11, 15. But, beyond this "bald assertion," he offers no context about these other female drivers, their offenses, or their supervisors. Hollingsworth, 2024 WL 4332118, at *10. And while he contends that, during his "benching" after this accident, other "less tenured" or "new" female drivers filled his previous driving role, see Compl. at 1, 6; Opp'n at 2, 9, 17, these female drivers are irrelevant—nowhere has Dickens alleged that they committed similar offenses or were subject to discipline, let alone by the same supervisors.

Next, Dickens contends that his five-day suspension in November 2022 after he failed to confront students on the bus was discriminatory because two other attendants on the same route—one of whom was a woman but neither of whom was a bus driver—were not also disciplined. See Compl. at 2; June 2023 EEOC Charge at 2–3. These allegations are self-defeating. Dickens concedes that these potential comparators had different jobs, and one of them is a man. See Redmon v. YMCA of Metro. Wash., 417 F. Supp. 3d 99, 104 (D.D.C. 2019) (reasoning that, if the defendant employer "had some discriminatory bias against men, one would expect other men to have suffered some adverse employment consequences"); McGunagle v. Mayorkas, No. 22-cv-0126 (CKK), 2023 WL 1438374, at *3 (D.D.C. Feb. 1, 2023) (granting motion to dismiss plaintiff's "anti-male discrimination" claim where his "demotion was made permanent by a male subordinate of the new male Inspector General" and his two male supervisors had treated both men and woman the same in disciplinary situations).

Finally, as to the denial of his holiday leave, Dickens states only that "female employees" received leave, Compl. at 1, without offering any additional allegations about those female employees' jobs, or the circumstances of their requests.

In sum, Dickens's conclusory assertions that he was treated worse than female employees are insufficient to create an inference of discrimination and therefore to state a sex-discrimination claim.

### 3. Hostile Work Environment

To state a hostile work environment claim, a plaintiff must allege that his workplace was "permeated with discriminatory intimidation, ridicule, and insult" that was "sufficiently severe or pervasive to alter the conditions of [his] employment and create an abusive working environment[.]" Harris v. Forklift Sys., Inc., 510 U.S. 17, 21 (1993) (quotation marks omitted) (citation omitted). Courts evaluate such claims under the totality of the circumstances, considering the frequency, severity, offensiveness, and impact of the conduct on the plaintiff's performance. Baloch v. Kempthorne, 550 F.3d 1191, 1201 (D.C. Cir. 2008). The behavior must be extreme enough to alter employment conditions so that Title VII does not become a mere "general civility code." Faragher v. City of Boca Raton, 524 U.S. 775, 788 (1998) (quoting Oncale v. Sundowner Offshore Servs., Inc., 523 U.S. 75, 80 (1998)).

Moreover, a plaintiff must demonstrate that the incidents are connected, as "discrete acts constituting discrimination or retaliation claims" are distinct from a hostile work environment claim, which must be based on "severe and pervasive discriminatory intimidation or insult." Lester v. Natsios, 290 F. Supp. 2d 11, 33 (D.D.C. 2003) (citing Morgan, 536 U.S. at 115–16); see also Franklin v. Potter, 600 F. Supp. 2d 38, 77 (D.D.C. 2009). Finally, the plaintiff must

establish a link between the alleged hostility and membership in a protected class.  Scott, 60 F. Supp. 3d at 164.

 To support his hostile work environment claims, Dickens points to the adverse actions he advanced to support his sex-discrimination claim (his reassignments, suspensions, and the denial of his request for leave), as well as various incidents of mistreatment and bullying.  Specifically, Dickens alleges he was (1) punched by a co-worker and confronted outside a bathroom; (2) intermittently taunted and mocked by his colleagues, supervisors, and management, and was once threatened by his driving trainer; (3) surveilled, micromanaged, undermined, publicly criticized for his performance and driving history; (4) assigned to supervisors and trainers with whom he did not get along; (5) experienced delays or denials in training and career opportunities and had his responsibilities downgraded; and (6) falsely accused of various offenses.

 These allegations fail to establish a hostile work environment for three reasons.  First, he does not connect the alleged conduct to his sex.  See Bryant v. Brownlee, 265 F. Supp. 2d 52, 63 (D.D.C. 2003) ("Despite the sheer number of incidents of which plaintiff complains, her claim of a discriminatory hostile work environment contains at least one glaring defect: none of the allegations give rise to an inference of discrimination by defendant based on race, color, or age.").  While Dickens asserts that female employees were sometimes treated more favorably, he also implies that some male employees received better treatment than he did.  See Compl. at 2. Ultimately, his claim rests on allegations of general workplace mistreatment, not sex-based hostility.  Na'im v. Clinton, 626 F. Supp. 2d 63, 73 (D.D.C. 2009) ("[H]ostile behavior, no matter how unjustified or egregious, cannot support a claim of hostile work environment unless there exists some linkage between the hostile behavior and the plaintiff's membership in a protected class.").

Relatedly, Dickens's allegations span his nearly two decades of employment with OSSE, with no indication of an escalating pattern.  "[E]ven genuinely troublesome conduct," if isolated and spread out over years, generally does not suffice for a hostile work environment claim because it suggests a lack of pervasiveness.  Mokhtar v. Kerry, 83 F. Supp. 3d 49, 84 (D.D.C. 2015) (quoting Brantley v. Kempthorne, No. 06–1137 (ESH), 2008 WL 2073913, at *8 (D.D.C. May 13, 2008)); see also Nurriddin, 674 F. Supp. 2d at 94.

Finally, the allegedly adverse acts Dickens suffered cannot support this claim because "courts have generally rejected hostile work environment claims that are based on work-related actions by supervisors."  Arnoldi v. Bd. of Trs., 557 F. Supp. 3d 105, 121 (D.D.C. 2021) (citation omitted); see also Nurriddin, 674 F. Supp. 2d at 94 ("[T]he removal of important assignments, lowered performance evaluations, and close scrutiny of assignments by management [cannot] be characterized as sufficiently intimidating or offensive in an ordinary workplace context.").  And, as for the claimed bullying and mistreatment, even if it was unpleasant or unfair, it does not rise to the level of severe or pervasive harassment.  Courts have previously rejected similar claims.  See, e.g., Daniel v. Johns Hopkins Univ., 118 F. Supp. 3d 312, 320 (D.D.C. 2015) (concluding that being struck repeatedly by a co-worker was neither sufficient nor pervasive); Rupard v. Myorkas, No. 22-cv-01806 (CRC), 2023 WL 5650083, at *6 (D.D.C. Aug. 31, 2024) (determining that allegations of months of taunts, mockery, and intimidation failed to state a claim).  Workplace criticisms, public reprimands, micromanagement, and exclusion—without more—are not enough.  Clemmons v. Acad. for Educ. Dev., 107 F. Supp. 3d 100, 122 (D.D.C. 2015) (affirming judgment that false accusations, humiliation, screaming, and harsh treatment were "insufficiently severe or pervasive"); Dudley v. Wash. Metro. Area Transit Auth., 924 F. Supp. 2d 141, 171 (D.D.C. 2013) ("[H]aving a rude, harsh, or unfair boss is not enough for a

hostile work environment claim."); <u>Pearsall v. Holder</u>, 610 F. Supp. 2d 87, 98 n.10 (D.D.C.

2009) (concluding that allegations of denial of training and underutilization in a role did not

support a hostile work environment claim).

Accordingly, Dickens's allegations, even when viewed collectively, do not meet the legal

standard for a hostile work environment, so the Court will dismiss this claim.

### 4. Retaliation

To state a retaliation claim, a plaintiff must allege that (1) he opposed a practice unlawful

under Title VII; (2) his employer took a materially adverse action against him; and (3) the action

was taken "because" of the opposition. <u>McGrath v. Clinton</u>, 666 F.3d 1377, 1380 (D.C. Cir.

2012). To satisfy the causation element, a plaintiff must show that the employer knew about the

employee's activity and took the adverse action "shortly after that[.]" <u>Mitchell v. Baldrige</u>, 759

F.2d 80, 86 (D.C. Cir. 1985). While a causal link can sometimes be inferred when

discriminatory treatment follows protected activity, <u>see</u> <u>Grant v. Bethlehem Steel Corp.</u>, 622

F.2d 43, 46 (2d Cir.1980), courts require "very close" temporal proximity between an

employer's knowledge of protected activity and an adverse employment action for timing alone

to establish causation, <u>Glenn v. Williams</u>, No. 98-cv-1278 (CKK), 2006 WL 401816, at *25

(D.D.C. Feb. 21, 2006). The Court takes judicial notice of the fact that the EEOC notifies

employers within ten days of a charge being filed. What You Can Expect After a Charge is

Filed, U.S. Equal Employment Opportunity Commission,

https://www.eeoc.gov/employers/what-you-can-expect-after-charge-filed (last visited Mar. 11,

2025). [7]

---

[7] "At this motion-to-dismiss stage, the court may take judicial notice of publicly available
information on official government websites." <u>Lee v. Blinken</u>, No. 23-cv-1783 (DLF), 2024 WL

Dickens's first cited example of protected activity—his 2008 Accident Review Board proceeding victory—does not qualify as protected under Title VII, as he does not allege that it involved claims of unlawful discrimination.  Similarly, his 2023 intake inquiries with OHR and EEOC do not constitute protected activity because intake questionnaires and inquiries are not formal discrimination charges, and employers are generally not notified of them.  See Ahuja v. Detica Inc., 873 F. Supp. 2d 221, 228–30 (D.D.C. 2012); Everson v. Cong. Black Caucus Found., Inc., No. 19-cv-2720 (TJK), 2020 WL 6118440, at *6 (D.D.C. Oct. 16, 2020).  And Dickens does not allege facts suggesting that OSSE was otherwise aware of them.

While Dickens's alleged 2008 sex discrimination case and EEO charges from 2014 and 2016 qualify as protected activity, they are too temporally distant to support causation for any allegedly retaliatory actions in or after March 2022.  Courts routinely reject causation claims when significant time has elapsed.  See Taylor v. Solis, 571 F.3d 1313, 1322 (D.C. Cir. 2009) (determining a two-and-a-half-month gap was too long to establish temporal proximity); Pueschel v. Chao, 955 F.3d 163, 167 (D.C. Cir. 2020) (affirming dismissal where 15 years had passed between protected activity and adverse action).

However, Dickens asserts that he filed an EEOC charge in October 2022.  See Opp'n at 12.  He provides an EEOC portal printout noting an inquiry submitted October 6, 2022, with a status of "[c]harge [p]repared."  See Portal Notes.  While the printout describes the filing as an inquiry, which would generally not trigger employer notification, its status as "[c]harge [p]repared" suggests it may have progressed to a formal charge, at which point the employer

_____

639635, at *1 n.1 (D.D.C. Feb. 15, 2024) (first citing Fed. R. Evid. 201(b); and then citing Cannon v. District of Columbia, 717 F.3d 200, 205 n.2 (D.C. Cir. 2013)).

would be notified.  Although the Court lacks full information on this charge's processing or outcome, at the motion-to-dismiss stage, this allegation is sufficient to establish that Dickens engaged in protected activity.  Additionally, Dickens's allegations suggest that OSSE was aware of his charge, given that employers are notified within ten days of an EEOC charge being filed. Finally, there is a sufficiently close temporal proximity between the charge and OSSE's alleged actions:  Within one month, Dickens was purportedly suspended for five days for his handling of the dangerous run and denied holiday leave.  Accordingly, Dickens's retaliation claim survives dismissal, but only as to retaliation allegedly arising from his October 2, 2022, EEOC Charge.[8]

    B.    Dickens's Second Motion to Amend

The Court will deny Dickens's second motion to amend.

First, this motion does not comply with Circuit law.  As Dickens concedes, he did not attach a proposed amended pleading, as required by Local Rule 15.1, nor did he specify the "particular grounds on which amendment is sought[,]" Rollins, 703 F.3d at 130; see also MTA II at 1.  This "non-compliance is more than a mere technical error."  Strum, 2025 WL 405120, at *11.  "Instead, the lack of a separate motion and proposed amended pleading 'make[s] it impossible for the Court (or the [Defendant]) to evaluate the merits of [Dickens's] request for leave to amend.'"  Id. (first and second alterations in original) (quoting Johnson v. District of Columbia, 49 F. Supp. 3d 115, 122 (D.D.C. 2014)).

_____

[8] Should what is left of Dicken's retaliation claim proceed to summary judgment, Dickens will not only have to show that he engaged in protected activity by filing a formal EEOC charge and that the supervisors who were involved in the alleged retaliation were aware of the charge.  He will also have to come up with evidence, apart from his own opinion, that the five-day suspension and the denial of holiday leave were motivated by retaliation, rather than legitimate factors related to his job performance or leave status.

Second, Dickens offers no justification for his delay in filing the motion or for the prejudice it might cause to the District.  The District already consented to his first motion to amend, accommodated most of his supplemental filings, and completed its motion-to-dismiss briefing.  Allowing further amendment at this stage would disrupt and delay proceedings.  See Atchinson v. District of Columbia, 73 F.3d 418, 426 (D.C. Cir. 1996) (recognizing that, in deciding whether to grant leave to amend, "[c]onsideration of whether delay is undue . . . should generally take into account the actions of the other parties and any resulting prejudice").

Third, Dickens's motion largely repeats allegations from his prior filings.  See MTA II at 1 (addressing Dickens's refusal to return to work because of the alleged hostile work environment and OSSE's refusal to pay him until he returns to work).  Courts routinely deny leave to amend when the new claims merely restate existing ones.  See McGee v. District of Columbia, 646 F. Supp. 2d 115, 121 (D.D.C. 2009) (denying leave to amend where new claims arose from the same facts, legal duties, and injuries as prior ones).  Since Dickens's amendments do not cure the defects in his complaint, granting leave to amend would be futile.  See Richardson v. United States, 193 F.3d 545, 548–49 (D.C. Cir. 1999).

Accordingly, the motion is denied.

C.     Dickens's Second Motion to Appoint Counsel and to Electronically File

As previously explained, see ECF 6, "[p]laintiffs in civil cases do not have a constitutional or statutory right to counsel[,]" Pinson v. U.S. Dep't of Just., 55 F. Supp. 3d 80, 83 (D.D.C. 2014); Willis v. FBI, 274 F.3d 531, 532–33 (D.C. Cir. 2001).  However, under 28 U.S.C. § 1915(e)(1), a district court may appoint counsel to a plaintiff proceeding in forma pauperis "in 'exceptional circumstances' when the denial of counsel would result in fundamental unfairness."

Pinson, 55 F. Supp. 3d at 83 (citation omitted).  The Local Rules provide four factors courts

should consider when deciding whether to appoint counsel:

> (i) Nature and complexity of the action;
>
> (ii) Potential merit of the pro se party's claims;
>
> (iii) Demonstrated inability of the pro se party to retain counsel by other means; and
>
> (iv) Degree to which the interests of justice will be served by appointment of counsel, including the benefit the Court may derive from the assistance of the appointed counsel.

LCvR 83.11(b)(3) (listing factors).

Dickens's motion to appoint counsel properly addresses the relevant factors and

shows the appointment of counsel is warranted.  See Mot. Appoint Counsel at 1–2.

Further prosecution of the remaining retaliation claim could prove unwieldy for a pro se

litigant, particularly since that claim is now proceeding to discovery.  Dickens has

already demonstrated his indigency, as well as his diligent yet unsuccessful efforts to

retain counsel on his own accord, see, e.g., Compl. Mem. at 3–19 (chronicling attempts to

retain counsel).  And the Court determines that it would benefit from the assistance of

appointed counsel in litigating Dickens's remaining claim as this case moves past the

motion-to-dismiss stage.  Accordingly, the Court will appoint counsel.

Finally, the Court will deny Dickens's request to electronically file without prejudice.

The Local Rules set out the process of a pro se party to obtain access to CM/ECF[9]:

> A pro se party may obtain a CM/ECF user name and password from the Clerk with leave of Court . . . To obtain leave of Court, the pro se party must file a written motion entitled "Motion for CM/ECF User Name and Password," describing the party's access to the internet, confirming the capacity to file documents and receive

---

[9] While Dickens requests PACER access, see Mot. Appoint Counsel at 2–3, electronic access in this district is available via CM/ECF.

filings electronically on a regular basis, and certifying that he . . . either has successfully completed the entire Clerk's Office on-line tutorial or has been permitted to file electronically in other federal courts.

LCvR 5.4(b)(2).  Upon obtaining a CM/ECF password, a party "consents to electronic service of all documents" and becomes "responsible for monitoring his e-mail accounts," "retrieving the noticed filing[s,]" and filing any required timely responses.  LCvR 5.4(b)(6).  In other words, after receiving CM/ECF access, a party can no longer receive or file documents in paper form.  Therefore, compliance with the factors is required to ensure that the party will be able to adequately access the case documents electronically.

In his motion, Dickens addresses his access to the internet and his ability to electronically file but not whether he can receive files electronically, has successfully completed the Clerk's Office on-line tutorial, or previously received permission to file electronically.  See Mot. Appoint Counsel at 2–3.  Therefore, his request to electronically file is denied without prejudice.

## IV.    Conclusion

For the foregoing reasons, it is hereby

**ORDERED** that Defendant's [ECF 16] Motion to Dismiss is GRANTED in part and DENIED in part.  It is further

**ORDERED** that Plaintiff's [ECF 22] Second Motion to Amend his Complaint is DENIED.  It is further

**ORDERED** that Plaintiff's [ECF 21] Motion to Appoint Counsel and Electronically File is GRANTED in part and DENIED in part.  His motion to appoint counsel is granted, but his motion to electronically file is denied.  It is further

**ORDERED** that the Clerk's Office attempt to secure counsel for Plaintiff from the Court's pro bono panel pursuant to Local Rule 83.11.  It is further

      **ORDERED** that Defendant shall answer Plaintiff's retaliation claim within 30 days.  It is further

      **ORDERED** that all deadlines following Defendant's answer be stayed pending entry of appearance by Plaintiff's appointed counsel.

      **SO ORDERED**.

 

 

                                                 _____
                                                 CHRISTOPHER R. COOPER
                                                 United States District Judge

Date:  March 21, 2025